## GLASS COMPANY v. S. S. LUDLUM, *Adm'r*, etc.

1. PRACTICE—*Settling Bills of Exceptions.* If the bill of exceptions or case made as presented to the district court by the party aggrieved does not state all the facts, and the exceptions of both parties on the point presented, it is the right of the other party to have such facts or exceptions inserted before the bill of exceptions or case made is signed.

2. ADMINISTRATORS' BONDS—*Liability of Sureties.* When it appears from the petition that A is the administrator of the individual estate of H, late one of the firm of H & L, and is also the administrator of the partnership property of H & L, and has given separate bonds for the performance of each trust, and the sureties in both bonds are sued in the same action, and it plainly appears from the petition that the sureties on the bond for the faithful administration of the individual estate of H are not liable, a demurrer by such sureties is properly sustained.

3. ——— Where the suit is against the sureties on the bond for the faithful performance of the partnership trust, and on a judgment of the probate court against their principal, and when the record is presented it

appears to be a settlement and order of payment out of the individual estate of the decedent in the hands of the administrator, such a record will not authorize a recovery against the sureties on the bond for the faithful execution of the trust imposed by taking possession of the partnership estate.

4. ADMINISTRATOR—*Separate Trusts; Liability.* Where a decedent leaves an individual estate, and also a partnership estate, his administrator may (in the manner and cases provided by law) take possession of and administer upon the partnership property of the firm of which the decedent was a member, as well as upon the individual estate. But the estates are separate and distinct; the one is the sole estate of the deceased; the other, the joint estate of the deceased and surviving partner. The administrator must keep his accounts separate, and make settlement of each estate by itself; he cannot mingle them together in one common account.

5. ———— *Application of Trust Funds.* The fund derived from the individual estate of a decedent is primarily liable for his individual debts; that derived from the partnership property for the liabilities of the firm. Until the partnership estate is fully administered, and the respective interests of the deceased and surviving partner are ascertained, no creditor or legatee of the deceased can claim the fund arising from the partnership property.

*Error from Leavenworth District Court.*

IN 1865 and 1866, William H. Hays and John B. Ludlum, partners as Hays & Ludlum, were trading as merchants at the city of Leavenworth. They were indebted to the *Boston and Sandwich Glass Company*, a corporation organized under the laws of Massachusetts, in the sum of $1,153.24 for goods sold. William H. Hays died March 26, 1866, and in July thereafter *Samuel S. Ludlum* was duly appointed and qualified as administrator of his estate, giving a bond, as such administrator, with *William Dunlap* and *D. R. Anthony* as sureties. The petition avers that "All the property of which said Hays died seized was the one undivided half of the goods, chattels and credits theretofore belonging to the said firm of Hays & Ludlum, all of which said property was situate within the county of Leavenworth, and within the jurisdiction of the probate court in and for said county." John B. Ludlum, sur-

3—8TH KAS.

viving partner of said Hays, neglected and refused to give the bond required by law to be given, (Comp. Laws, 1862, p. 519, § 47; Gen. Stat., 1868, p. 437, § 33,) to enable him to hold and manage the partnership effects of said firm of Hays & Ludlum; and thereupon said *Samuel S. Ludlum*, as administrator as aforesaid, took possession of said partnership property, and gave a bond as principal, with *E. T. Carr*, *Thomas R. Clark*, and *Lafayette Mills* as sureties, (Comp. L., p. 520, §§ 49, 50; Gen. Stat., p. 437, §§ 35, 36,) conditioned for the faithful execution of the trust devolved upon him by taking possession of said partnership property. On the 18th of April, 1869, said administrator filed in the probate court a "report," entitled as follows: "SAMUEL S. LUDLUM, *Administrator*, &c.—Acc't,—Estate of William H. Hays, deceased." Said account was itemized; and it is shown that the administrator had received $11,156.68, and had paid out (including his commission,) $2,580.07; and said report closed with the statement, "Balance due estate, $8,576.61."

Claims "of the fifth class" against the estate of Hays had been presented and allowed by the probate court to the amount of $9,926.59, which amount included the above-mentioned claim of said *Glass Company*, $1,153.24, for which sum judgment was duly entered in said probate court, as provided by statute.

The report and account of the administrator were duly recorded in the probate court, and on said 18th of April, 1869, said probate court made and entered of record, respecting said report, and the said "balance" of $8,576.61 "due estate" of Hays, an order as follows : "On reading and filing the above and foregoing report, and the vouchers accompanying the same, and being fully advised in the premises, ordered that the same be and it is hereby approved, and the adm'r ordered to pay the several claimants of the fifth class 86.40 per cent. of the full amount of their claims, as allowed by the court, as shown by the record," etc. The amount due the *Glass Company*, according to said apportionment and order, was $1,071.95. The administrator refused to pay said sum, whereupon said *Glass Company* brought suit against said *Ludlum*, adminis

trator, and said *Dunlap, Anthony, Carr, Clark,* and *Mills,* the sureties in both bonds, to recover the said sum of $1,071.95, "the amount found due and ordered to be paid as aforesaid." *Dunlap* and *Anthony* demurred; and had final judgment in their favor on their demurrer. *Carr, Clark,* and *Mills* answered, making a general denial. The case was tried at the March Term, 1869, of the district court; and a jury being waived, the court made certain special findings of facts, and gave judgment in favor of the defendants. A question of practice, raised on the setting of the exceptions, is fully stated in the opinion of the court. The motion for a new trial being overruled, the *Glass Company* bring the case here on error for review.

*J. C. Hemingray,* and *F. P. Fitzwilliam,* for plaintiff in error:

1. The court below, in settling the case, erred in inserting therein, by way of amendments thereto, the *defendants'* objections to the admission of certain parts of the evidence given at the trial; and this court will not consider them, as they are not brought before it for review.

The well recognized rule in making a case, is that "the *party appealing* must make his case and have it settled, with such a statement of the facts as will show necessarily the law in his favor. It is not necessary for any conceivable purpose in making a case to review the trial, to prepare a literal transcript of all the testimony." 13 N. Y., 348; 16 N. Y., 611; 22 N. Y., 334.

The court will only look to the errors assigned by the appellant. The defendants are not aggrieved by the judgment, and cannot sustain any proceedings in error to defeat its reversal, for such proceedings exist only in favor of a party whose substantial rights are predjudiced by the judgment; and it will not bring up an exception, or error, occurring at the trial, taken by the party when judgment has been given for him. 14 Cal., 18, 39; 13 Wend., 280; 9 Ohio, 6; 40 Me., 256; 36 Penn. St., 325; 38 Miss., 503; 21 Ohio St., 16.

2. The questions presented by the demurrer to the petition are new, and call for a judicial construction of the statute, and especially so far as it relates to the administration of co-partner-ship property. Comp. L., 1862, 519, §45, et seq.; Gen. Stat., 1868, p 436, § 31, et seq.

When a demand is established in the probate court, it is against the decedent's estate, and the order of allowance is against the estate, and has all the force and effect of a judgment. This is so, irrespective of the character of the assets that may vest in the administrator; for he is charged with the payment of the demands determined and allowed against the the estate out of the assets in his hands, whether the assets arose from the sole estate of the deceased, or the joint estate of the decedent and the surviving partner. He is required by the statute to discharge the firm liabilities out of the fund derived from the firm property first, and afterwards the individual liabilities of the decedent's estate out of whatever may then belong to the individual estate. But this requirement of the statute is for the administrator to follow, and does not in any manner affect a discharge of the sureties to the first bond, nor relieve them from responsibility to the creditors.

3. The court below erred in not making its conclusion of law for plaintiff, upon the conclusions of fact as found, and in not rendering judgment in favor of the plaintiff and against the defendants. There was no conflict of evidence, and no dispute about the facts of the case, and the conclusion to be drawn from these facts is a question of law. 1 Kas., 311; 9 N. Y., 465; 40 id., 382.

Administrator's bonds seem to form an exception to the general rule; and the sureties therein, in respect to their liability for the default of the principal, seem to be classed with such sureties as covenant that their principal shall do a particular act. 25 Cal., 223; 3 McCord, 138.

The sureties have no more right than the principal to deny assets. By their bond they are bound for the acts of the administrator co-extensively with his liability, and cannot deny

assets, for the recital in the bond shows that there were assets. 1 Gr. Ev., § 523; 23 Conn., 388; 26 Ill., 189; 5 N. H., 246.

*James McCahon*, and *Clough & Wheat*, for defendants in error:

1. The bond given when the administrator was appointed, and upon which Anthony and Dunlap are sureties, was given to secure the proper administration of the *individual* assets of Hays, and the sureties on that bond are not liable for the proper administration of the *partnership* assets.

The administration of the individual estate, and the administration of the partnership estate, are separate and distinct trusts. The giving of the first bond entitles the administrator to administer upon the individual estate. The giving of the second bond entitles him, after the refusal of the survivor, to administer the partnership effects. The giving of the second bond is a condition precedent to the administrator's taking possession of the partnership estate, and cannot be dispensed with. 38 Me., 47; 11 S. &. R.; 441; 28 Mo., 181; 55 Penn. St. 236; 8 Watts, 214; 11 Mass., 190; 5 Ind., 202; 21 id., 119, 207; 24 id., 56; 2 Rawle, 222; 4 Nevada, 429; 1 Metc., 317.

2. The bond upon which Carr, Clark, and Mills are sureties, does not contain the condition required by law, and is therefore void. It is a bond conditioned "for the faithful execution of the trust" incurred by the act of having taken possession of the partnership property, not "to faithfully execute the trust of the administration of that property," as the statute requires. Comp. L., 1862, p. 520, §§ 49, 50.

The probate court had no jurisdiction to require such a bond. Its authority being purely statutory, it could require no bond other than that authorized by the statute. 8 Penn. St., 101; 3 J. J. Marsh., 592.

3. The liability of an administrator should be ascertained as to each trust. The accounts of each should have been kept separate. This is necessary in order to ascertain which bond is liable. Comp. L., p. 539, § 189; Gen. Stat., p. 462, § 159; 55 Penn. St., 236; 3 Chand., 41; 40 N. H., 73; 12 Wend., 492.

Glass Co. v. Ludlum.

The authority to ascertain the source of the assets is given to the probate court before referred to, and the jurisdiction being vested in that court for that purpose, it is exclusive, and no other court can exercise it. 6 Ohio St., 599; 46 Me., 500; 7 Ind., 25; 5 Johns., 275; 11 Ark., 12; 12 Wis., 626; 16 Mass., 65; 4 Metc., 212; 5 Foster, 22.

If the probate court failed to ascertain the source on the settlement of the account, the district court could not do it in the action on the bond.

The probate court is a tribunal of inferior and limited jurisdiction; and the facts necessary to confer jurisdiction must affirmatively appear. 1 Sandf., 228; 12 Wend., 793; 10 Abb., 431; 2 Barb., 639; 3 Iowa, 114; 23 Ill., 484; 4 Mon., 405, 406; 31 Conn., 381; 49 Me., 360; 29 Penn. St., 443; 19 Cal., 188; 39 N. H., 272.

The source whence the assets are derived is to be ascertained by the probate court. It is the source of the assets that determines which set of sureties are liable. If they were derived from the individual estate, and so adjudged by the probate court, the sureties on the first bond would be liable. If derived from the partnership estate, and so adjudged by the probate court, then the sureties on the second bond would be liable.

The opinion of the court was delivered by

KINGMAN, C. J.: A question of practice is raised which must first be settled. A case made, or a bill of exceptions, should speak the truth as to the particular matter intended to be preserved thereby; and if there are any facts not presented by the party aggrieved, the adverse party has a right to insist that such facts shall be inserted in the case made, or bill of exceptions, before it is signed. In this case the defendants in error had a right to demand that their several exceptions made on the trial should be made a part of the "case made," and the court below correctly permitted such action. Such exceptions might be material, and of vital importance in this court. Gen. Stat., p. 740, § 559.

1. Practice. Settling exceptions.

This was an action brought by the plaintiff to recover a sum of money due them from the partnership firm of Hays & Ludlum. It was brought against Samuel S. Ludlum, administrator of William H. Hays, and against William Dunlap and D. R. Anthony, his sureties in the administration bond, and against S. T. Carr, Thomas R. Clark, and Lafayette Mills, his sureties on a bond for the faithful execution of the trust incurred by Ludlum by reason of his taking possession of the property of Hays & Ludlum, a firm composed of John B. Ludlum and the decedent Hays.

The defendants Dunlap and Anthony interposed a demurrer, on the ground that the petition did not state facts sufficient to constitute a cause of action against them. The demurrer was sustained, and this ruling it is insisted is erroneous. But there can be little doubt that the decision of the court was correct. The petition, after stating the cause of action and the fact that Anthony and Dunlap had executed the bond as sureties of the administrator in his administration of Hays' estate, and that Clark, Carr, and Mills were the sureties of the administrator for the faithful execution of the trust that had devolved upon him by reason of his having taken possession of the partnership property, has this averment:

*2. Liability of sureties.*

"Plaintiffs further allege that all of the property of which the said Wm. H. Hays died seized was the one undivided half of the goods and chattels and credits theretofore belonging to the firm of Hays & Ludlum, all of which said property and assets were situate within the said county of Leavenworth and state of Kansas aforesaid, and within the jurisdiction of said probate court in and for said county."

The petition elsewhere states with great particularity that it was on giving the bond with Clark, Carr, and Mills, as his sureties, that he did forthwith take possession of the partnership assets. In another part of the petition it is alleged that the probate court apportioned the sum of money in the hands of the administrator among the creditors of the late firm of Hays & Ludlum. It is clear that if all the assets in the hands of the administrator were the partnership property, and required to pay the partnership debts, then the sureties in the administra-

tion bond were not primarily liable. By the common law the surviving partner would have been the one to whom the creditors of the firm of Hays & Ludlum would have had to look for their money, and against whom they would have had to bring suit, if such a proceeding was necessary. In the absence of statutory regulations, the law was, that on the death of one of the partners, as the surviving partner stood charged with the whole of the partnership debts, the interest of the partners in the property should be held so far a joint tenancy as to enable the surviving partners to take the property by survivorship for all purposes of holding and administering the estate, until the property is reduced to money, and the debts are paid; but when the debts are all paid, and the purposes of the partnership are all accomplished, the surviving partner is to account for and pay over to the representative of the deceased partner his just share of the partnership funds. We have stated the law as it existed before the statute of our state changed it, to show that in the absence of the statute Dunlap and Anthony would not be liable on the bond until the partnership debts were paid, and the remainder of the partnership assets had come into the hands of the administrator. But our statute has made a material change in the law. Before a surviving partner can proceed to close up the partnership affairs, he must give a bond: Comp. L., p. 519, § 47; (Gen. Stat., p. 437, § 33.) If he fails to give the bond, the estate, not only of the decedent, but of the surviving partner as far as the partnership is concerned, can be taken from his possession and given to the administrator upon his giving the requisite bond. Comp. L., p. 520, §§ 49, 50. (Gen. Stat.; p. 437, §§ 35, 36.) This bond is to secure the execution of the trust; and that trust is that he takes not only the property of the decedent, but also that of the surviving partner, pay off the debts of the partnership with the proceeds thereof as far as the same will go, and pay over to the surviving partner his just proportion of the funds, if any shall be found due after the payment of the debts. Now, by the averments of the petition, all the property that ever came into the hands of S. S. Ludlum came as the administrator of this trust, for which alone the

sureties on the second bond were liable. And where a petition shows that a defendant is not liable, a demurrer is properly sustained; and such is this case. The plaintiff by his own showing had no cause of action against Dunlap and Anthony, and had no right to keep them in court any longer.

The action was on a judgment of the probate court of Leavenworth county, in favor of the plaintiff, and against S. S. Ludlum, in his fiduciary character, and alleging as breach that the administrator refused to pay, and had converted the assets to his own use and benefit. Answers were filed by Carr, Clark, and Mills, and a jury being waived, a trial was had before the court who found the facts and gave judgment for the defendants. It is important to bear in mind the object of the plaintiff's petition, which is to enforce against the sureties on the bond a judgment of the probate court against their principal, and that the breach alleged is the conversion of the assets to his own use by the administrator, and his refusal to pay the judgment. This will broadly mark the distinction between this case and many of those cited in argument, where the breach was a neglect to account, or a willful concealment of assets in a settlement, or a want of due dilligence and fidelity in closing up the affairs of the partnership. The court below decided the case upon the ground that the evidence when introduced did not sustain the breach as laid down by the plaintiff in his petition; or, in his own words: "The record does not show that the money in the hands of the administrator, and which he was ordered to pay to the creditors, was derived from the partnership estate." And in this proposition we agree with the learned judge of the district court, whose very able opinion is before us, and from which, as it fairly and plainly elucidates the point under discussion, we make this extract:

"If the record was susceptible of the construction claimed by the plaintiffs, I should be disposed to solve any mere doubts in their favor; but I have read it with great care two or three times, and each reading has strengthened my conviction that it will bear no such interpretation. The report, or account of the

*3, Partnership trust; liability of sureties.*

administrator is headed, 'Samuel S. Ludlum, adm'r, &c.—Acc't —Estate of William H. Hays, dec'd;' then follows a list of items debiting the administrator with money collected from time to time, sometimes merely stating the names of the persons from whom received, and at others that it was for merchandise sold or accounts collected. Following this is an itemized account of money paid out, giving the name of the person to whom paid, and indicating in very general terms for what purpose, such as wages, rent of store, printing, store fixtures, lights and fuel, etc., and concluding with a summary of the whole amount of money collected and paid out, with the amount of the claims of the fifth class, showing money sufficient to pay the above per cent. on all claims of that class.

4. Administrator; nature and character of his separate trusts. Attached is an affidavit of Ludlum, swearing to the truth of the report, in which he styles himself, 'administrator of the estate of William H. Hays, deceased.' The form of the report, or account, is that usually followed by administrators of the individual or general estate of deceased persons. The record of the action of the court shows simply that the report of the administrator was approved, and he was ordered to pay eighty-six and two-fifths per cent. of the full amount of debts of the fifth class, together with three or four other claims specially described. But nowhere, either in the report, or the action of the court thereon, does it appear, or is it intimated, that it was a settlement of the administration of the property of the firm of Hays & Ludlum, or that the money in the hands of the administrator belonged to the partnership estate, or was derived therefrom. The administrator was required to keep his accounts separate, and make settlement of each estate by itself. He could not mingle them together in one common account. The estates were separate and distinct. The one was the sole estate of the deceased. The other was the joint estate of the decedent and surviving partner. The fund derived from one estate was primarily liable for the

5. Application of trust funds. individual debts of the deceased; that derived from the other for the liabilities of the firm. Until

the partnership estate was fully administered, and the respective interests of the deceased and surviving partner were ascertained, no creditor or legatee of the deceased could claim the fund arising from the partnership property. Then, if the settlement does not show upon its face that both estates were included in the report, or account, there can be no presumption to that effect. The law would presume he was making settlement only upon one estate, the record showing for itself which one. The administrator could not make a settlement of his administration on the partnership estate, and then, when sued, claim it was a settlement of his administration on the individual estate of the decedent. He is bound by the settlement, as he makes it, as it appears by the record. The record is conclusive upon him, save only for fraud or mistake. It is equally conclusive on creditors of either estate.

"I feel clear, therefore, that the construction claimed for the record of settlement by the counsel for the plaintiffs is not the proper and correct one. From what has been said it may be inferred, and probably necessarily so, that the record shows a settlement of the individual estate of the deceased; and unless they could show fraud or a mistake, the sureties to the first bond would be liable for the amount claimed in this suit."

So far we entirely agree with the decision of the district court, and the decision of this point settles this case. The action is on a judgment of the probate court, a judgment which the petition alleges is against the administrator of Hays, acting as the administrator of the partnership estate of Hays & Ludlum; a judgment that is conclusive and binding on the sureties of the administrator of this partnership trust. And when examined, the record shows a judgment against the same party, but as the administrator of a *different* fund. Such a judgment most clearly does not fix any liability on Carr, Clark, and Mills. The judgment is not against Ludlum on any trust which these parties are surety for. There are no allegations in the petition of fraud or mistake in the settlement—no allegations that authorize the court to go behind the judgment rendered, even if the district court has that power. The petition merely seeks to

make certain parties liable as sureties on a bond, because the plaintiff has a judgment against the principal that binds the sureties. When the judgment is presented it appears on its face to be one that does not affect any fund for which the sureties are bound. The judgment in such a case must speak for itself—must of necessity be its own interpreter. The court cannot go behind it, or look for evidence elsewhere to explain it. The settlement and order of payment in conformity thereto is the judgment of the probate court, and beyond this the district court decided rightfully it could not go in this case. The authorities in support of this proposition are numerous, and are to be found in the brief of the defendants in error.

Many other grave questions were discussed in the argument, but as their decision is not necessary in this case, an examination of them will not be attempted in this opinion, though they have received that attention that their importance demands. The judgment of the district court is affirmed.

VALENTINE, J., concurring.

BREWER, J., not sitting.